M. L. COGGINS v. ÆTNA INSURANCE COMPANY.

(Filed 19 February, 1907).

1. **Fire Insurance Policies—Validity of "Iron-safe Clause."**—The limitation of liability of a fire insurance company contained in the "iron-safe clause" is reasonable and valid.

2. **Producing a General Statement of Values Not a Compliance.**—It is not a compliance by the insured with his contract to produce a complete itemized inventory of stock on hand for him to produce a general statement of aggregate values; and such alone being no compliance, the question of substantial compliance does not arise.

3. **What Inventory Must Show.**—An inventory must show "a detailed and itemized enumeration of the articles composing the stock, and value of each," so that it may appear that the articles are embraced by the contract of insurance, and that the price of each, and the sum total, are reasonable.

4. **Premium Entire, Separate Risks Identified.**—When the amount of insurance under the policy is specifically apportioned to the building and the goods therein contained in fixed amounts as to each, and the premium is entire and the risks substantially identical, the obligation of the insurer is single, and the insured cannot recover as to either when he fails to produce the books and inventory required by his contract of insurance.

CIVIL ACTION to recover on a policy of insurance, tried before *McNeill, J.,* and a jury, at May Term, 1906, of JACKSON Superior Court.

There was evidence tending to show that plaintiff, having conducted for several years a general mercantile business at Fernhurst, Jackson County, N. C., in May, 1904, established a subsidiary business at Erastus, N. C., two miles distant from the other store, and conducted same till the loss here-after referred to. This second enterprise was carried on in a small storehouse, 18 by 25 feet, and a side room, 7 by 25 feet, making the entire floor space 25 by 25, the house being valued by estimate at $300.

In January, 1905, the plaintiff procured a policy of insurance in defendant company on the structure at Erastus, N. C., and the merchandise therein contained, consisting principally of groceries, boots and shoes and clothing; the amount of insurance on the store being fixed in the policy at $200 and that on the goods at $1,500.

On the night of 17 April, 1905, the storehouse at Erastus and all the goods therein contained was destroyed by fire, and defendant company, having failed and refused to pay the insurance, the plaintiff (claiming that his loss, by reason of destruction of store was $300 and that the goods destroyed at the time amounted to $2,100) instituted the present action to recover the amount due on the policy.

At the close of plaintiff's testimony, on motion of defendant, the action was dismissed as on judgment of nonsuit, and plaintiff excepted and appealed.

*Walter E. Moore, Shepherd & Shepherd* and *Coleman C. Cowan* for plaintiff.

*Merrick & Barnard* and *King, Spalding & Little* for defendant.

HOKE, J. Defendant resists recovery in this case by reason of alleged breach of certain stipulations of the policy com-

prehended under the general term, *"the iron-safe clause."*
These stipulations, as contained in the present policy, are
as follows:

"1. The assured will take a complete itemized inventory of
stock on hand at least once in each calendar year, and unless
such inventory has been taken within twelve calendar months
prior to the date of this policy, one shall be taken in detail
within thirty days of issuance of this policy, or this policy
shall be null and void from such date, and upon demand of
the assured the unearned premium from such date shall be
returned.

"2. The assured will keep a set of books which shall clearly
and plainly present a complete record of business transacted,
including all purchases, sales and shipments, both for cash
and credit, from date of inventory as provided for in first
section of this clause, and during the continuance of this
policy.

"3. The assured will keep such books and inventory, and
also the last preceding inventory, if such has been taken,
securely locked in a fire-proof safe at night, and at all times
when the building mentioned in this policy is not actually
open for business; or, failing in this, the assured will keep
such books and inventories in some place not exposed to a fire
which would destroy the aforesaid building.

"In the event of failure to produce such set of books and
inventories for the inspection of this company, this policy
shall become null and void, and such failure shall constitute
a perpetual bar to any recovery thereon."

And the breach assigned is for violation of the first and
second items of the clause, to-wit, that the insured made no
inventory and kept no books as required by these provisions
of the contract.

This "iron-safe clause," frequently attached to policies
of insurance, has been very generally upheld by the courts as
a reasonable contract limitation on the risk which should be

properly borne by the company. *Knight v. Insurance Co.,* 111 Ga., 122; *Sowers v. Insurance Co.,* 113 Iowa, 551; *Lozano v. Insurance Co.,* 78 Fed., 278; *Insurance Co. v. Kearney,* 98 Fed., 314.

These decisions and the reasons given to support them are, we think, well considered, and the clause, therefore, when properly made a part of the contract of insurance, will be adjudged with us a valid and binding stipulation.

In the two cases before this Court where the question has been raised, *Bray v. Insurance Co.,* 139 N. C., 390, and *Parker v. Insurance Co.,* 143 N. C., and in which recovery by the plaintiff was sustained, the fire occurred within thirty days from the date of the policy, and by the express terms of the contract, the provision known as the iron-safe clause, while incorporated in the policy, had not become effective.

In construing this clause, the better considered authorities seem to be to the effect that it should receive a reasonable interpretation, and that only a substantial compliance should be required. *Brown v. Insurance Co.,* 89 Texas, 591; *Insurance Co. v. Kemendo,* 94 Texas, 367; *Insurance Co. v. Redding,* 68 Fed., 708; *Insurance Co. v. Kearney,* 94 Fed., 314; *s. c.,* 180 U. S., 132. There are decisions, however, which hold that a literal compliance should be exacted. But whatever may be the correct rule, there has been no compliance in the present case.

The plaintiff, giving evidence in his own behalf (and his was the only oral testimony produced at the trial), testified as follows: "The defendant's agent asked me in regard to an inventory, and I said to him I did not have an inventory; that I only took an assay of the goods about once a year. He then asked me if I had any inventory of my stock here at home, and I told him no." (Record, p. 17). And again, on pages 21 and 22, plaintiff testified further as follows: "Yes, I had another store. The two stores were two miles—may be a little further—apart. I have been running the other store

about six or seven years. The first stock in the new store was made partly out of the old store; the goods were in boxes and were just carried to the other store. I had moved these goods there in May, 1904. They had been in my other store and had not been there but just a little bit. They consisted of dry goods, clothing, hardware, tin hardware, groceries and shoes. I never separated those bills. There were also some drugs—just a general line. No, I never kept any books of the Erastus store. Just a memorandum. I have the sale-books. I have the memorandum of the books kept. I just tore the leaves out of the book and have them here in my vest pocket. Here are the credit accounts."

Plaintiff's counsel endeavored to supply the data which would furnish an approximate estimate of the amount of goods by offering as exhibits certain invoices of goods which plaintiff had sent from the principal store to the store at Erastus, and of some which he had purchased for the latter store after the enterprise was under way. A part of these invoices were burned in the store, but other and much the greater part had, it seems, been copied on to two or three leaves of the ledger of the home store. But these invoices and the entries made from them do not all amount to an inventory of the goods. They are simply a general statement of the aggregate value of goods sent by plaintiff from one store to the other, and frequently the kind of goods is altogether omitted. Thus, the amount of bills of goods taken from Fernhurst store to Erastus store:

No. 1. Shoes ........................$ 377.45
No. 2. Dry goods ...................   259.86
No. 3. Mixed bills .................    83.29
No. 4. Mixed bills .................    68.89

etc., showing five others, termed mixed bills. Then three "bills for suits"; then bill for shoes, aggregating $1,342.34.

In *Roberts v. Insurance Co.,* 19 Tex. Civ. App., 344, an inventory is defined to be "A detailed and itemized enumeration of the articles composing the stock with the value of each." And other decisions and law books generally give substantially a similar definition. *Insurance Co. v. Knight, supra; Insurance Co. v. Calhoun,* 28 Texas Civ. App., 338; *Insurance Co., v. Kemendo,* 94 Texas, 367; Black's Law Dict., 643.

In *Kemendo's case, supra, Brown, J.,* delivering the opinion, stated the object and purpose of inventory as follows: "The object of having an inventory made was not to ascertain the gross value of the property insured, but to ascertain the different articles that went to make up the stock in order that the insurance company might test the correctness of the claim in two respects: (1) whether the articles of which the stock was composed all belonged to the class of goods covered by the policies; (2) whether the valuations attached to the different items, and which went to make up the total sum expressed, was reasonable." Speaking further on this subject—and the comment is appropriate to the facts before us—the Judge said: "If the assured had furnished everything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the Court; but where there is no compliance whatever, there can be no question of substantial compliance." And so it is here.

There has never been any inventory taken of the goods comprising the stock of this Erastus store, the one covered by the policy. There is not now and has never been any data from which such an inventory could be reasonably approximated.

The plaintiff, himself, testifying to this question, very correctly and properly said: "No, I do not know how much hardware, groceries and shoes I had. I never separated these bills. There was also some drugs—just a general line." The

Court was right, therefore, in holding that on the evidence of plaintiff, there had been a breach of the first stipulation in the iron-safe clause.

Plaintiff then takes the position that while this ruling would prevent a recovery for the loss of the goods, he should still be allowed to recover for the loss of the storehouse, inasmuch as the policy placed a definite and distinct portion of the insurance on the building. But we cannot so interpret the contract. True, the amount of the insurance is apportioned, a definite sum being specified for the building and another for the goods. It is also true that the stipulations of the iron-safe clause are more especially addressed to the insurance of the goods; but the premium on the policy is entire; the concluding stipulation is to the effect that if the insured fails to produce the set of books and inventories as required by the contract, the policy shall become null and void and the "failure shall constitute a perpetual bar to any recovery thereon." And furthermore, the goods are insured "while they are contained in the storehouse, and not elsewhere"; thus making the risk on the goods and on the building substantially identical.

According to the evidence the goods were placed in a small frame structure 25 by 25 feet, not worth over $300, where the destruction of the one would almost of a certainty involve the destruction of the other; and the physical hazard of the risk and the moral hazard, as affected by these stipulations in question, were one and the same. In such case, we are clearly of the opinion that the contract is not divisible, and that a breach of the stipulation will go to the entire measure of the obligation.

We are aware that there is much conflict among the decisions on policies of this character, where separate amounts are named on different items or kinds of property, and the premium is one and entire. Many of the decisions are to the

effect that whenever the premium is entire and undivided, the obligation is likewise indivisible, and that a breach of a stipulation when it so provides will bar any and all recovery in case of loss.

This was so held in the well-considered case of *Knight v. Insurance Co.,* 111 Ga., *supra,* and in which many authorities are cited. There are cases to the contrary, as in *Miller v. Insurance Co.,* 14 Oklahoma, 81 S. C., 65; L. R. A., 173, cited by plaintiff's counsel, in which a recovery for the building was sustained, notwithstanding there had been a breach of the iron-safe clause established; the clause being expressed · in the exact language of the one contained in this policy; and quite a number of cases are cited as supporting authority.

Without going into any extended review of these different decisions, we are of opinion that the great weight of authority, as well as the better reason, establishes the positions that when, to the fact that the premium is entire, there is added the fact of identity of risk, the obligation is single, and on breach of the stipulation all recovery is barred.

This question of identity of risk being held the determinative factor in policies of this kind, where the amounts are separate and the premiums entire, is very well treated in a note to *Wright v. Insurance Co.,* 19 L. R. A., 211, the case being taken from 12 Montana, 474, where a number of decisions on this subject are considered and reviewed.

There are cases in our own court where this identity of risk has been made a controlling feature in the decision. *Cuthbertson v. Insurance Co.,* 96 N. C., 480; *Biggs v. Insurance Co.,* 88 N. C., 141. In this last case, *Ruffin, J.,* for the Court said: "But it is not necessary that we should further advert to them or attempt to reconcile them, for according to no one of them is there a doubt but that in a case like ours, in which the property insured consists of a single store-

house and the goods kept therein, a breach as to part will work a forfeiture as to the whole. In such case it is impossible to introduce any new element of carelessness by lessening the interest of the owner in one species of the property, so as to increase the risk thereof, without at the same time adding to the hazard of the other. Every risk that can attend the one must attend the other, and consequently the same rule must apply to both."

We hold that on the entire evidence no recovery could be had, and the action was properly dismissed.

Affirmed.