## J. M. ARNOLD v. INDEMNITY FIRE INSURANCE COMPANY OF NEW YORK ET AL.

(Filed 31 March, 1910.)

### 1. Insurance, Fire—"Iron-safe Clause"—Substantial Compliance.

The provisions of the "iron-safe clause" of a policy of fire insurance are for the general purpose of furnishing data by which to ascertain the amount of goods on hand at the time of the fire, and estimating with reasonable correctness the amount of the loss, and a substantial compliance by the insured therewith in keeping a set of books, and also of "locking them securely in a fireproof safe at night, etc.," is sufficient.

### 2. Same.

It is a substantial compliance with the "iron-safe clause" of a policy of fire insurance for the insured to produce after the fire an inventory made since the issuance of the policy, with a ledger and day-book, which had been kept in the iron safe, and a bank book kept in a place not exposed to the fire which destroyed the building, which, taken together, afforded data for a plain and concise statement of the business dealings of the insured for the period covered by the policy, and from which the amount of his loss could reasonably be ascertained; and a correct set of books, as stipulated for in this clause of the policy, refers to such as are usually kept by those conducting business of a like character of that of the insured, affording such information, and not necessarily that only which an expert would call exact.

### 3. Same—Inventory Itemized.

While an item of inventory of a stock of goods, required by the iron-safe clause in a policy of fire insurance, reading, for example, "Harness, robes, collars, horse blankets, $1,250," is not such a "detailed, itemized statement" as to meet the requirements, the inventory should not be entirely set aside and a forfeiture declared on that account, when the much larger proportion of the amount of the inventory, and the articles of chiefest value, which fixed the general character of the business, were set out, itemized and valued.

### 4. Insurance, Fire—Inventory—Estimate of Values—Evidence Corroborative.

Under a nonwaiver agreement the adjusters of an insurance company and the insured made an estimate of insured's loss of buggies, etc., covered by the policy, by going over the débris left by the fire, and counting the irons and gearings. Subsequently, the inventory which it was thought had been destroyed was found in the iron safe, and the estimated value and the amount of the inventory approximated each other: *Held*, the estimate of value was not relevant as tending to show compliance with the iron-safe clause, but afforded strong confirmatory proof as to the correctness of the inventory, which was produced and relied on.

5. **Insurance, Fire—Inventory—"Iron-safe Clause"—Inadvertence—Substantial Compliance.**

   An inventory of a stock of goods inadvertently left on insured's desk at his place of business and not put into the iron safe, and which was destroyed by the fire of his store and stock of goods, does not of itself, as a matter of law, affect the insured's substantial compliance with the "iron-safe clause" of his policy, when there is no evidence of willfulness or design, or that its absence was of importance in ascertaining the extent of the damages.

6. **Insurance, Fire—"Last Inventory"—Interpretation of Statutes.**

   "The last preceding inventory" required by the "iron-safe clause" in a policy of fire insurance, refers and is confined to inventories taken under the contract of insurance and after it was entered into.

APPEAL from *Guion, J.,* at Fall Term, 1909, of CRAVEN.

Civil action to recover on three insurance policies. The policies in three different companies bearing date 23 October, 1906, contained an agreement to indemnify plaintiff in different sums for one year against loss by fire, etc., "on his stock of carriages, buggies, wagons and other vehicles, also harness, robes, whips and saddlery, stable utensils and supplies, including medicines, feed, hay, grain, and on office furniture and fixtures, including iron safe, stationery and signs, all while contained in the two-story brick metal-roof building and frame extension and additions, situated west side of Middle Street, No. 122½, New Bern, N. C."

Three suits were instituted, but, as the policies all contained the same stipulations, and recovery on each depended on the same state of facts, the actions were consolidated by order of court and tried together, and no objection to this course was made or noted.

It was proved that the property insured was destroyed by fire on the night of 2 April, 1907, and defendants resisted recovery chiefly by reason of alleged violation of the stipulations in the policy, very generally known as the iron-safe clause, and there was evidence on the part of plaintiff tending to show substantial compliance with its requirements, and evidence *contra* on the part of the defendants. Among other things, and as relevant to this attempted defense, the court charged the jury as follows:

"(I charge you that the alleged inventory offered upon the part of the plaintiff in this case purporting to have been made by him in February preceding the fire, in a book produced and offered in evidence before you, and called, as I recollect, 'Ex-

hibit B,' is a substantial compliance with that form that is required to be kept by him under the terms and provisions of the iron-safe clause.)

"Each defendant excepts to part in above parenthesis.

"He is required under the terms and provisions of this iron-safe clause to keep a set of books which clearly and plainly present a complete record of the business transactions, including his purchases, sales and shipments, both for cash and credit, as set out in this clause.  A ledger is offered in evidence before you—a book termed a ledger—by the plaintiff, which has been exhibited to you and is part of the evidence in the case; also, a book is offered by him in evidence which is termed the blotter; and likewise an inventory, and these are a part of the evidence in this case.  The plaintiff contends that in addition thereto he kept a bank book in which the cash transactions appear, and that every cash sale was entered upon his bank book, which he likewise contends is a part of the set of books which were kept by him in his business transactions.

"(I therefore charge you that if you shall find by the greater weight of all the evidence, and the burden is upon the plaintiff in this case to satisfy you by the greater weight, the preponderance of evidence, that he did comply with the terms and provisions of this clause, that he kept a set of books called an inventory book, that it was made up by him during the month of February, 1907; that he kept a ledger, offered in evidence before you, in which he stated was kept a record of the credit sales made by him and the entries thereon; that he kept a blotter, in which his cash sales were made other than his credit sales, and entered by him, and that he kept a bank book, in which other than the sales upon the blotter and credit sales as evidenced upon the ledger were placed as cash deposited by him from sales in° the bank.  If you shall further find that such books and inventories so compiled were kept securely locked in a fireproof safe at night and kept in such safe at all times when the building in which the goods were kept was not kept open for business; and if you further find that these books, such as the ledger, blotter and inventories, were required to be produced by the defendants, and when so required the plaintiff did so produce such books and inventories on inquiry of the company, I charge you that that would be a substantial compliance with the requirements of the iron-safe clause as to keeping a set of books and producing them on demand; therefore, if you find from the greater weight of the evidence, the burden being upon the plaintiff to satisfy you that he kept a set of books, and that

they were produced for inspection on demand of the companies, then it is your duty to answer the first issue 'Yes.')"

And further:

"(If the plaintiff has satisfied you by this greater weight of the evidence that he kept a set of books that clearly and plainly presented his sales, purchases and shipments, both for cash and credit; that he kept inventories as required by the terms of the policies; that his books and papers were kept in an iron safe, fireproof; if you find that he acted in all respects in compliance with the iron-safe clause, your answer to the first issue will be 'Yes'), and you will proceed to the second issue."

This bank book referred to, as its name imports, containing a statement of cash deposited with the bank, arising from some of sales by plaintiff in his business, does not seem to have been kept with the other books in the safe or in the store, but was cared for under the provision in the iron-safe clause: "or failing in this (keeping books in an iron safe), the insured will keep such books and inventories in some place not exposed to a fire which would destroy the building."

Under the charge and the issues submitted the jury rendered the following verdict:

"1. Did the plaintiff comply with the terms and provisions of the policies declared on in the complaint? Answer: Yes.

"2. If so, what damage, if any, is the plaintiff entitled to recover? Answer: Give $3,500, without interest."

Judgment on verdict for plaintiff, and defendants excepted and appealed.

*Moore & Dunn* and *W. D. McIver* for plaintiff.
*Simmons, Ward & Allen, D. L. Ward* and *W. H. Pace* for defendant.

HOKE, J., after stating the case: The policies sued on express the stipulations, commonly known as the iron-safe clause, as follows: "The following covenant and warranty is hereby made a part of the policy: 1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date; and upon demand of the assured, the unearned premium from such date shall be returned. 2d. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided

for in first section of this clause, and during the continuance of this policy. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building."

The general purpose of these provisions is to "furnish data by which to ascertain the amount of goods on hand at the time of the fire, and estimate with reasonable correctness the amount of the loss," and it is held by the greater weight of authority that a substantial compliance on the part of the insured is all that should be required. *Coggins v. Insurance Co.,* 144 N. C., 7; *Liverpool Ins. Co. v. Kearney,* 180 U. S., 132, affirming decision of C. C. A., 94 Fed., 314; *Western Ins. Co. v. Redding,* 68 Fed., 708; *Malin v. Mercantile and C. Ins. Co.,* 105 Mo. App., 625; *Western Insurance Co. v. Kemendo,* 94 Tex., 367; *Brown v. Palatine Ins. Co.,* 89 Tex., 590; *Fire Assn. v. Short,* 100 Ill. App., 553; *Connecticut Ins. Co. v. Jears,* 60 Neb., 338, *s. c.,* with elaborate note in 51 L. R. A., 698; Cooley's Briefs on Insurance, vol. II, p. 1817-18; Clement's "Fire Insurance as a Valid Contract," 266.

In Clement on Fire Insurance, *supra,* the author says: "Where the insured in good faith has shown by his acts a disposition or intent to comply with the clause, and endeavored to meet its requirements, but is prevented from literal and exact compliance by accident or misfortune, without fault or fraud, the tendency and weight of modern authority is in favor of the rule or doctrine of substantial performance."

And in Cooley, *supra:* "On the theory that the iron-safe clause is a promissory warranty, and therefore governed by the rules that usually obtain in the case of warranties, it has been held in some jurisdictions that strict compliance with the terms of the clause is necessary." Citing *Western Assur. Co. v. Altheimer Bros.,* 58 Ark., 565, and *Goldman v. North British Mercantile Ins. Co.,* 48 La. Ann., 223, and others.

"It is to be noted, however, that in the *Altheimer case* there was in fact a strict compliance, and in the *Goldman case* there was not even a substantial compliance. The rule of strict compliance seems to have been modified in later decisions in Illinois (*Fire Assn. v. Short,* 100 Ill., 553), and has been overruled in Texas (*Brown v. Palatine Ins. Co.,* 89 Tex., 590; 35 S. W., 1060).

"On the other hand, on the theory that, though the iron-safe

clause may be a promissory warranty, it is in effect a condition subsequent, which should be construed strictly against the right of forfeiture (*McNutt v. Virginia Fire and Marine Ins. Co.* (Tenn. Ch. App.), 45 S. W., 61, it has been held in other juris-. dictions and by the weight of authority that a substantial compliance with the terms of the clause is sufficient." Citing a large number of authorities.

In the case at bar it appears that the insurance policies were taken out on or about 23 October, 1905; that before application was made or the question of insurance mooted, and within a year of taking out the policies, plaintiff had made an inventory of his stock, stated in detail and aggregating about $5,000 in value, and a copy of same was in the store at the time of the fire; but, having been left on the desk, was destroyed. That on or about 17 February, 1907, about six weeks before the fire on 2 April, plaintiff had taken another inventory, giving a detailed statement of a larger portion of the stock on hand covered by the policies, and a description and itemized valuation of the principal articles in which he was dealing—carriages, wagons and other vehicles—and amounting in value to $5,303.50, an excerpt from the paper, by way of illustration, being as follows:

| | | |
|---|---:|---:|
| 3 rubber-tire buggies | $98.00 | $294.00 |
| 6 top buggies | 46.85 | 281.10 |
| 8 open buggies | 36.00 | 288.00 |
| 1 rubber-tire carriage | 165.00 | |
| 1 six-seat carriage | 150.00 | |

and so on, showing a large number of vehicles, wagons, etc., described in detail, and valued by items as stated. Plaintiff also kept a ledger and day-book, or blotter, purporting to be a statement of business dealings, and a bank book, which he said showed some additional cash sales made in his business, and testified that these books contained an entire record of his business since the inventory of 17 February, to the fire, and for the time covered by them. The inventory of 17 February, and the ledger and day-book were kept in the safe, and procured therefrom soon after the fire. The inventory, with some other papers, by reason of the heat, having stuck to the wood partition in the safe, was not found as soon as the day-book and ledger; but the evidence was satisfactory, and under the charge the jury have found that all of these books were procured from the safe after the fire; and the bank book was also produced, having, it seems, been kept with the plaintiff, and coming under the provision, "that if not kept in the safe, in some place not exposed to a fire which would destroy the building." On the

evidence, and applying the principles declared and sustained in the authorities above cited, we think the learned judge correctly ruled that the inventory was a substantial compliance with that feature of the iron-safe clause, and in charging the jury, in substance, that if plaintiff kept such an inventory in his safe, and also a ledger and day-book, producing same when required, and that these books, together with a bank book, afforded a plain and clear statement of plaintiff's business dealings for the period covered by the policy, this would be a substantial compliance with the stipulations of the iron-safe clause, and the first issue should be answered "Yes."

It was chiefly contended before us that the inventory was defective by reason of the following item appearing in the same: "Harness, robes, collars and horse blankets, $1,250." Such an item in itself does not come within any proper or approved definition of an inventory said to be "a detailed, an itemized statement of the articles composing the stock, with the value of each." *Roberts v. Insurance Co.,* 19 Tex. Civ. App., 344, approved in *Coggins v. Insurance Co., supra.* And, if this had been the general character of the inventory relied on, or the greater portion and controlling feature of it, the objection would have to be sustained. But, as heretofore stated, much the larger proportion of the amount, and the articles of chiefest value and which fixed the general character of the business, were set out, itemized and valued; and in a case of this character we are of opinion that such an inventory should not be entirely set aside and a forfeiture declared because a single item or inventory of the kind referred to was not in strict compliance with the contract.

In *Assurance Co. v. Redding, supra,* the required books and data were produced, except a cash sales book covering a period of twenty-one days before the fire, which had been inadvertently left out. *Held,* that the promissory warranty was a condition subsequent, and that the evidence justified a finding of substantial compliance.

In *Brown v. Palatine Co.,* 89 Tex., *supra,* the blotter containing the cash sales of the day before the fire had been left out of the safe for the purpose of transferring the entries later to more substantial books, and was destroyed. All other books were produced, and it was held a substantial compliance. In this case the digest, relevant to the present inquiry, is as follows:

"(1) It will not be presumed that the parties intended to prescribe that which was practically impossible, such as absolute accuracy in the keeping of the books. A substantial compliance

would suffice in such case and the contract be construed as requiring no more than could be reasonably expected of the insured.

"(2) The purpose of such warranty will be considered in construing the language and determining whether its intent and meaning had been complied with in keeping the books.

"(3) Books so kept as to enable the insurer with reasonable certainty to arrive at the amount of loss should be held a compliance with the contract. •

"(4) Whether the books so kept and produced by insured were a substantial compliance with the warranty, being a question of fact determined in the affirmative by the trial court, the Court of Civil Appeals, not finding the facts otherwise, improperly held that the failure to enter the sales of the last day upon the books worked a forfeiture as a matter of law."

Like comment, sustained by the same and similar authorities, may be made in reference to another item in the inventory, as follows: "Sloan's medicine, oil, whips, summer robes, lots of different kinds of medicines and second-hand harness, $775."

We are confirmed in the view we have expressed as to the effect of these two items of the inventory on the validity of plaintiff's claim by the fact that nothing appears in the record to raise serious question as to the *bona fides* of this loss or the correctness of the inventory produced.    On the contrary, the evidence discloses that this inventory of date about six weeks before the fire was made in part with a view of selling out plaintiff's business to one J. H. Neal, and the negotiation was being conducted for Neal by one Gus Ipock, and both of these witnesses testified that they had examined the stock in reference to the contemplated trade, and their estimate was that the value was something near $5,000; that there was a large quantity of new harness on hand and second-hand harness, also robes, etc.; that they had no dissatisfaction with the amount of the inventory taken and exhibited to them, and the purchase was delayed only by reason of the fact that plaintiff required the entire payment in cash. - Again, after the fire, the adjuster of the companies and the plaintiff, not then knowing that the inventory would be found, under a nonwaiver agreement made an estimate of the property destroyed by going over the débris and determining the number of the vehicles and the amount of property destroyed by counting the irons and gearing left by the fire, and in an estimate so made by them, put in evidence as Exhibit A, the amount very nearly approximated that contained in the Inventory B, when it was afterwards found to be in the safe.    While, in reference to the estimate marked as Exhibit A, the judge be-

low properly held that it was not relevant as tending to show compliance with the stipulations of the "iron-safe clause," it afforded strong confirmatory proof as to the correctness of the inventory which was produced and relied upon.

It was further contended for the defendant that only one inventory was produced, whereas a specification of the iron-safe clause required that this and the "last preceding inventory" should also be kept; the language of the stipulation being: "That the assured will keep such books and inventory, and also the last preceding inventory if such has been taken, securely locked in a fireproof safe at night, etc." As heretofore stated, it appeared that the last inventory, being the one kept in the safe, had been taken on or about 15 February, 1907, six weeks before the fire. The plaintiff, a witness in his own behalf, testified that the preceding inventory had been taken about a year before, which would be eight or nine months before the policies were issued, being the one taken when plaintiff purchased the business. This had been left on plaintiff's desk, and was destroyed in the fire. The evidence tended to show that this was a mere inadvertence, and under the authorities cited, *Assurance Co. v. Redding, supra; Malin v. Insurance Co.,* 105 Mo. App., *supra,* and others of like import, even though the policy referred to this as the "last preceding inventory," in the absence of any evidence of willfulness or design, or that its absence was of some importance, such circumstance would not, as a matter of law, affect the result or require a verdict against substantial compliance; and we are inclined to the opinion, too, that under recognized principles of interpretation, this stipulation for keeping the "last preceding inventory," by fair intendment refers and is confined to inventories taken under the contract of insurance and after it was entered into. The only other inventory which had been taken in this case was one made long before the policies were issued, and before the treaty concerning them was entered upon. There is nothing in the terms of the policy which expressly requires that such an inventory so taken shall be kept, and it is a well-established rule of construction in these policies that questions of doubtful import should be resolved against the company.

Thus, in *Liverpool Insurance Co. v. Kearney, supra,* Associate Justice Harlan, for the Court, said: "To the general rule there is an apparent exception in the case of contracts of insurance, namely, that where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer. This exception rests upon the ground that the company's attorneys, officers or

ARNOLD *v.* INSURANCE COMPANY.

agents prepared the policy, and it is its language that must be interpreted." Citing *National Bank v. Insurance Co.,* 95 U. S., 673, 678-9; *Moulor v. Amer. Life Insurance Co.,* 111 U. S., 333-341.

In *Fire Assn. v. Short,* 100 Ill. App., *supra,* it was held: "5. A condition that would defeat an insurance policy must be expressed, or so clearly implied that it cannot be misconstrued. Insurance companies write and sign their policies, and where there are doubtful constructions they will be held against the insurer. Policies must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim for indemnity."

And our own decisions are to the same effect. *Bank v. Fidelity Dep. Co.,* 128 N. C., 366.

Speaking generally to the questions presented on this appeal, in Cooley's Insurance Briefs, page 1823, it is said: "So, where the insured was in business in a little country town in Florida, and his books, kept in most primitive style, were far from being what a good accountant would consider a complete set of books (*Western Assurance Co. v. Redding,* 68 Fed., 708; 15 C. C. A., 619; 30 U. S. App., 442), the Court held that, if the insured kept a set of books which were as good as ordinarily kept in such a store and business, and exercised good faith in the matter, his policy was not avoided merely by the fact that the books were not what an expert would consider a complete set of books. If his books were kept in the manner customary with merchants (*Jones v. Southern Insurance Co.,* C. C. 38 Fed., 19), and as elaborate and complete as is usually the case in stores of like character (*Burnett v. Amer. Cent. Insurance Co.,* 68 Mo. App., 343), it is sufficient. Whether the books are sufficient within these principles, is a question for the jury (*Western Assur. Co. v. Altheimer Bros.,* 58 Ark., 565; 25 S. W., 1067); and an expert cannot testify, in regard to a particular set of books, that he never saw anything like it before (*Morris v. Imperial Insurance Co.,* 106 Ga., 461; 32 S. E., 595)."

We are of opinion that this case has been correctly tried, that no reversible error appears in the record, and the judgment rendered should be affirmed.

No error.