GLEAT MORRIS TODD, T/A NORTHEAST RIVER ESSO STATION v. NATIONWIDE MUTUAL INSURANCE COMPANY, A CORPORATION

No. 725DC96

(Filed 17 January 1973)

Insurance § 6; Trial § 22— insurance against loss of money — duty of insured to keep records — sufficiency of evidence

In an action to recover on an insurance policy protecting plaintiff against loss of money and securities from his place of business, plaintiff's evidence was sufficient to present a jury question as to whether he had complied with the provision of the policy requiring that he keep records of all the insured property in such manner that the insurer could accurately determine therefrom the amount of loss.

Todd v. Insurance Co.

APPEAL by defendant from *Barefoot, District Judge,* 29 July 1971 Session of District Court held in NEW HANOVER County.

Plaintiff brought this civil action to recover $1,790.00 allegedly due him under an insurance policy issued by defendant. Plaintiff's evidence, in pertinent part, tended to show:

On 27 November 1968 plaintiff operated a service station in the City of Wilmington. On or about that date, in consideration of $200.00 premium, defendant issued an insurance policy, effective for one year from and after 27 November 1968, insuring plaintiff against "loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof within the premises . . . . " Maximum coverage provided by the policy was $3,000.00.

On the morning of 5 February 1969, while at his home, plaintiff "made up" a bank deposit consisting of $1,900.00 in cash and $1,183.63 in checks, a total of $3,083.63; attached to the cash and checks was a Wachovia Bank & Trust Company deposit slip showing plaintiff's name, account number, the amount of cash, amount of checks, and total amount of deposit. Before going to the bank, plaintiff stopped by his service station and, finding his two helpers quite busy, placed the intended deposit in a desk drawer in the station and proceeded to wait on customers. Some two hours later he opened the desk drawer and discovered that $1,790.00 of the cash had disappeared. Plaintiff's brother, who worked for him, proceeded to take the remaining $110.00 in cash and the checks to the bank. Immediately thereafter plaintiff called defendant's agent and reported the loss; he also called police who investigated the loss. No part of the money was ever recovered. Other pertinent evidence is hereinafter reviewed in the opinion.

On issues submitted, the jury found (1) that plaintiff suffered a loss "insured against by the terms and conditions of the policy," (2) that plaintiff complied with the terms and conditions of the policy, and (3) that plaintiff is entitled to recover $1,790.00 from defendant. From judgment rendered on the verdict, defendant appealed.

*Brown & Culbreth by Stephen E. Culbreth for plaintiff appellee.*

*Smith & Spivey by James K. Larrick for defendant appellant.*

PARKER, Judge.

Defendant assigns as error the failure of the trial court to allow its motions for directed verdict and for judgment notwithstanding the verdict.

As its reason for its motion for directed verdict at the close of all the evidence, defendant submitted that plaintiff did not comply with the terms and conditions of the policy and particularly with condition number 4 which provides: "The Insured shall keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of loss."

The evidence disclosed that plaintiff made a bank deposit on 19 January 1969 and that the next deposit was the one made for him by his brother on 5 February 1969. Plaintiff testified that he kept a daily record showing, among other things, total amount of daily sales, amount "paid out of drawer," cash on hand at end of each day, Esso-Matic invoices on hand at end of each day, and the overage or shortage at end of each day. He introduced in evidence sixteen exhibits purporting to provide information as aforesaid for the sixteen days beginning 20 January 1969 and ending 4 February 1969. Typical of the exhibits is the one for 20 January 1969 summarized as follows:

DATE: 1-20-1969

### SALES SUMMARY & CASH BALANCE

| | |
|---|---|
| Motor Fuel | $167.05 |
| Oil & A.T.F. | 3.60 |
| Accessories & Parts | 2.50 |
| Labor | 2.75 |
| TOTAL SALES | $175.90 |

\*    \*    \*    \*    \*

| | | |
|---|---|---|
| Paid Out of Drawer | | $ 31.80 |
| Cash (End of Day) | | 53.00 |
| Esso-Matic Invoices (End of Day) | | 73.51 |
| TOTAL ACCOUNTED FOR | | $158.31 |

| CASH | OVER | SHORT |
|---|---|---|
| Today | | $17.59 |

---

---

The item above set forth and entitled "Esso-Matic Invoices" represented sales on credit cards. In explaining his method of operation, plaintiff testified: "When I made the deposits on January 20, 1969, of $2,457.36, I deposited all the money that I then had on hand. . . . (M)y daily report would reflect the totality of my business for those days including credit cards, checks, nickels and dimes and folding money except for my wrecking money I took in. I didn't show that on my books. . . . That money did go into my deposits. . . . I don't know how much I average a month from the wrecker. It depends on how much I do. As to my average, one week I might make $10.00 or $20.00; next week I might take $200.00, it all depends. . . . These Esso-Matic Invoices were handled by me adding them up and sending them in, and they sent me a check. I don't put that in my daily record as a cash entry. . . . When I get my check back from Humble from my Esso-Matic Invoices, I put it in the bank. At that time, it would go in just as any other cash, but on my daily records it is not reflected as cash. . . . I might get five back in one day. I might not get one a week. . . . If I had received an Esso-Matic check back, I would not have that listed on my daily report, it would not be included. . . . As to whether it was ever reflected in my daily report or my daily records, I say, the only way is through my credit cards. That would be a check unless I had to use it for something and I go cash it. I have done that several times. When I made out my deposit on this morning of the alleged loss, I had $1,790.00 in cash."

Our research fails to disclose that either this Court or our Supreme Court has ever construed an insurance policy proviso identical to condition number 4 in the subject policy. Our Supreme Court has, however, considered the "iron-safe" clause found in many fire insurance policies covering mercantile inventories. Speaking of such a clause in *Coggins v. Insurance Co.,* 144 N.C. 7, 56 S.E. 506, the Court said: "In construing this clause, the better considered authorities seem to be to the effect that it should receive a reasonable interpretation, and that only a substantial compliance should be required." In *Arnold v. Insurance Company,* 152 N.C. 232, 67 S.E. 574, another case in which the "iron-safe" clause was involved, the opinion contains the following:

> " 'Insurance companies write and sign their policies, and where there are doubtful constructions they will be held against the insurer. Policies must be liberally construed in

favor of the insured, so as not to defeat, without a plain necessity, his claim for indemnity.'

\*   \*   \*   \*   \*

"Speaking generally as to the questions presented in this appeal, in Cooley's Insurance Briefs, page 1823, it is said: 'So, where the insured was in business in a little country town in Florida, and his books, kept in most primitive style, were far from being what a good accountant would consider a complete set of books (citation), the Court held that, if the insured kept a set of books which were as good as ordinarily kept in such a store and business, and exercised good faith in the matter, his policy was not avoided merely by the fact that the books were not what an expert would consider a complete set of books. If his books were kept in the manner customary with merchants (citation), and as elaborate and complete as is usually the case in stores of like character (citation), it is sufficient. Whether the books are sufficient within these principles, is a question for the jury (citation).' "

In 45 C.J.S., Insurance, § 658, p. 577, we find: "It is sufficient if the books and records are such that, with the assistance of those who kept them, or understood the system, the amount of the loss can be ascertained, or if a jury, as practical men, can determine the loss from the books and accounts."

It will be noted that in the cases involving "iron-safe" clauses considered by our Supreme Court, the clauses set out in considerable detail the types of records the insured should keep. That is not true in the instant case and the testimony was to the effect that defendant never instructed plaintiff as to the kind of records he should keep. Defendant's witness testified that the records kept by plaintiff were similar to those kept by other service station operators. Considering the nature of plaintiff's business, it would be extremely difficult for him to keep a complete record of money and securities possessed by him at all times. The daily reports for the sixteen days between deposits showed that plaintiff's total sales were $3,479.22 not counting cash received for wrecker service, and that his "paid out of drawer" disbursements during that time totaled $315.52, leaving a balance of $3,163.70. A tabulation of Esso-Matic invoices and cash on hand at end of each of the sixteen days totals $3,082.17, and this does not reflect any receipts

---

from wrecker service. While the evidence does not show the exact amount plaintiff received for his credit card invoices during those sixteen days, the inference is that those receipts were quite constant, sometimes as often as five times in a single day.

We hold that the evidence was sufficient to present a jury question as to whether plaintiff complied with condition number 4 of the policy, and that his records were sufficient to support his contention that he had $3,083.63 in cash and checks in his possession on 5 February 1969. Although defendant presented testimony of a certified public accountant to the effect that he examined plaintiff's records covering the period from 20 January 1969 through 10 February 1969 and that plaintiff's bank deposits reflected all receipts during that period, this presented a conflict in the evidence for the jury to resolve. It is well settled that discrepancies and contradictions in the evidence are to be resolved by the jury and not by the court. *Naylor v. Naylor,* 11 N.C. App. 384, 181 S.E. 2d 222.

Defendant's remaining assignments of error relate to the trial court's charge to the jury. We have carefully reviewed the charge and when considered contextually as a whole, we conclude that the charge is free from prejudicial error.

No error.

Judges BRITT and HEDRICK concur.