# John Coleman *v.* New York Bowery Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Personal property—Production of bills or reasonable effort as required by policy—Question for jury.*

In an action upon a policy of fire insurance on personal property where the policy requires that the insured shall furnish bills of purchase of the goods destroyed, or duplicates, it is the duty of the insured to comply with the terms of the policy, and if he is unable to produce the bills or their duplicates the burden is on him to show, at least, that he made a reasonable effort to do so, and was unsuccessful. In such a case the question whether it was possible or impossible for the insured to produce the bills or their duplicates is purely a question of fact to be determined by the jury from all the evidence before them.

A policy of fire insurance on personal property provided that the insured should produce bills of purchase or their duplicates. The insured did not refuse the request of the insurance company to produce the bills or duplicates, but expressed his willingness to do so. He wrote several letters to the agent who had purchased the goods to go and collect the bills, and offered to pay the agent's expenses, but it appeared that the agent had removed to a distant part of the country and engaged in another business, and was unwilling and refused to go. The insured himself did not know the names of the different persons from whom the goods were purchased, and his books and papers containing the information had all been destroyed by the fire. The purchasing agent was the only person who had such knowledge. *Held*, that the question was for the jury as to whether the insured had made a reasonable effort to produce the bills or duplicates.

Argued March 17, 1896. Appeal, No. 398, Jan. T., 1895, by defendant, from judgment of C. P. Lycoming Co., June T., 1894, No. 400, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, Mitchell and Fell, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before Metzger, P. J.

At the trial it appeared that the policy contained the following provision :

" The insured as often as required shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representatives."

The property destroyed consisted mainly of walking sticks and camp stools. The stock and materials had been purchased at various points in New England by S. E. Reutter, plaintiff's purchasing agent. Plaintiff was requested to produce the bills, but was unable to do so through the unwillingness of Reutter, who had removed to the state of Washington, to go to New England to procure them. The circumstances relating to the efforts to procure the bills are stated in the opinion of the Supreme Court.

The court charged in part as follows :

[But if, on the other hand, you are satisfied from all the evidence in this case that he used every reasonable means in his power and was unable to comply with the request of the company, then he can recover; because, as I said before, if it was impossible for him to perform that provision in the contract, the law is not so unreasonable as to demand of him performance. Now if you should find that Mr. Coleman, the plaintiff in this case, did use every reasonable means in his power to comply with the request of the company, and was unable to do so, then the next question for you to pass upon would be to determine what amount you should allow for that item, and whatever amount you would allow you will add to the amount you allow in the other two items.] [1]

Plaintiff's points and answers were as follows :

1. If the jury find that all of the plaintiff's books of account,

bills, invoices and other vouchers were destroyed in the fire of January 4, 1894, and that the plaintiff used every reasonable and honest effort to procure certified copies of said bills, invoices and other vouchers, and was unable to do so, it was a sufficient compliance with the terms of the policy in this behalf. *Answer :* We affirm this point if you find the facts all to be as they are stated in this point. It would be a reasonable compliance, or rather it would be an excuse for not complying with the request of the company, if he was unable and it was out of his power to furnish these bills or copies. [2]

2. If the jury find that Ferd. Weddigen, the insurance agent, did not in fact place the insurance for which the order was given him by plaintiff, even though he told the plaintiff he had placed it, then the loss in this case cannot be prorated with the insurance alleged to have been written by Weddigen. *Answer :* We affirm this point. [4]

Defendant's points and answers were as follows :

1. Since the policy of insurance issued by the defendant provides :

This company shall not be liable, under this policy, for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, cover-- ing such property, and since the evidence shows that before the fire Ferd. Weddigen, an insurance agent, had contracted with the plaintiff to place with an insurance company $100 of insur- ance upon his machinery and tools, and had neglected to fulfill the said contract whereby the plaintiff acquired a right of action against the said Weddigen to recover as damages the said sum for which such company would otherwise have been liable, the plaintiff is entitled to recover from this defendant only its pro- portionate part of the loss sustained upon the plaintiff's tools and machinery after the $100 of insurance so contracted for has been added to the remaining $700 of insurance on said property. *Answer :* Refused. [5]

2. Since the policy of insurance issued by the defendant pro- vides :

The insured as often as required shall produce for examina- tion all books of account, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable

place as may be designated by this company or its representatives, and since the evidence shows that the plaintiff neglected to comply with this condition of the policy after having been requested so to do by the defendant, for the purpose of ascertaining the amount of the loss sustained on his stock and materials, the plaintiff is not entitled in this action to recover anything on account of said loss. *Answer:* Refused. [3]

Verdict and judgment for plaintiff, $1,046.16. Defendant appealed.

*Errors assigned,* among others, were (1–5) above instructions, quoting them.

*Russell Duane* and *H. T. Ames,* of *Ames & Hammond,* for appellant.—The court below erred in submitting to the jury the questions whether or not the plaintiff had used every reasonable effort to procure the duplicate bills and vouchers, relating to his stock and materials, which were called for by the defendant; and whether or not it was possible to obtain them: Langan v. Royal Ins. Co. of Liverpool, 162 Pa. 357; O'Brien v. Commercial Fire Ins., 63 N. Y. 108; Mispelhorn v. Farmers' Fire Ins., 53 Md. 180; Longenecker v. Penna. R. R., 105 Pa. 328; Cover v. Manaway, 115 Pa. 338; Maul v. Rider, 59 Pa. 167; Smith v. Fisher, 24 Pa. 222.

*John J. Reardon,* with him *H. C. & S. T. McCormick,* for appellee.—It is admitted that the rule of law laid down in Langan v. Royal Ins. Co., 162 Pa. 357, is the correct rule as applicable to this clause of the policy, and we invoke that rule in the decision of this case: Mispelhorn v. Farmers' Ins. Co., 53 Md. 473.

OPINION BY MR. JUSTICE GREEN, October 5, 1896:

The learned court below carefully instructed the jury that the plaintiff was bound, upon the demand of the defendant, to produce to the defendant his bills and vouchers for the goods claimed to be lost, or certified copies thereof, if it was in his power to do so. The court distinctly said to the jury, "If he could produce these bills, or those copies and vouchers that they demanded, and did not do so, then he could not recover anything on that item." The matter left to the jury was that

if they were satisfied from all the evidence in the case that the plaintiff used every reasonable means in his power and was unable to comply with the request, he could recover. As the charge was strictly correct in this respect the only assignments of error in relation to this subject are, in substance, that the court was in error in submitting the question to the jury at all, on the ground that there was not sufficient evidence to warrant the submission. The first three assignments raise this question only. The fourth and fifth are unimportant and are not sustained, because there never was any insurance effected by Weddigen, and such insurance could not become an element in prorating the loss.

The only question in the cause is, therefore, whether there was sufficient evidence to justify the court in leaving to the jury the question, whether it was in the power of the plaintiff to furnish the bills and vouchers demanded of him, by any reasonable effort which it was competent for him to make. In the case of Langan v. Ins. Co., 162 Pa. 357, much relied upon for the appellant, the decision was put upon the ground that the plaintiff's personal testimony proved that he had made no effort to get duplicates of his bills, and in point of fact he never did get them or try to get them. In stating the rule in relation to the subject the present Chief Justice, delivering the opinion, said, " The clause above quoted is manifestly reasonable, and it was the duty of the plaintiff to comply with the demand. If he was unable to produce duplicates of the bills, the burden was on him to show, at least, that he made a reasonable effort to do so, and was unsuccessful: Mispelhorn v. Farmers' Ins. Co., 53 Md. 473; O'Brien v. Com. Ins. Co., 63 N. Y. 108. In the former it is said, " Whether it was possible or impossible for the plaintiff to produce duplicate bills of purchase was purely a question of fact to be determined by the jury from all the evidence before them, and although it might be found that it was impossible to produce duplicate bills of purchase of a certain class, that fact did not excuse the nonproduction of those that could have been obtained by a bona fide effort on his part."

It will thus be seen that the question is one for the jury to decide, and the rule becomes applicable that if there is evidence, more than a scintilla, in support of the disputed fact, it must

be submitted to the jury. This consideration makes it necessary to examine the testimony and see whether it is of the required standard.

There is no testimony that the plaintiff ever refused to produce the bills and vouchers, or to make effort to produce them. One witness, Grover, testified that the plaintiff in reply to a suggestion of his, " that it would be necessary for him to verify his inventory and that the companies looked to him (the plaintiff) for some data wherein they could arrive at some figures in relation to his loss," said, " it would take him too long and he didn't have to." This was neither a demand on the part of the defendant for the production of the bills or their duplicates, nor was it a refusal on the part of the plaintiff. The same witness testified later that he had written a few letters to the plaintiff making some demand upon him which he does not describe, but in reply to which he says of the plaintiff, " He did not refuse ; he didn't promise, he said he would try ; but later on in the interview he said it would take too long, and he didn't have to." The same witness also testified to a subsequent interview on March 31 as follows, " Well, the same ground was gone over that we went over previously ; Mr. Little was present at that time ; Mr. Coleman finally came to the conclusion that we were right and said we didn't ask anything that was unfair, and that he would get the bills and vouchers for us." Instead of there being a refusal on the part of the plaintiff to furnish bills and vouchers the plaintiff expressed his willingness to furnish them. The plaintiff on cross-examination by defendant's counsel testified, " I had a conversation with both gentlemen (Little and Grover) at Philadelphia the latter part of March, in which they claimed they wanted the bills and everything that was bought and sold. I said that I would get them, all I could, which I did." Being further cross-examined he was asked : "Q. You say you promised to furnish these bills and vouchers ? A. I told him I would try and get them, but Reutter had gone away and I couldn't get them. The books are all burned up, and I didn't know where to get them. Q. Did you send to Reutter for a list of the addresses ? A. I did. Q. Did you get any ? A. I heard from Reutter telling me he didn't know the names of all the parties and he would have to go himself."

The witness further testified that he wrote several letters to

Reutter to go and collect the bills or get duplicates of them and offering to pay his expenses to go, but that Reutter having removed to a distant part of the country, and engaged in other business, was unwilling to go, but in two of his letters he expressed a willingness to go if his expenses were paid, and, in one of his letters, if he was paid $3.00 per day, and in another $5.00 per day in addition. At last this correspondence between plaintiff and Reutter closed with a letter written by Reutter from a point in the state of Washington on April 27, 1894, as follows.

"JOHN COLEMAN, ESQ., WILLIAMSPORT, Pa.

"Dear Sir. In reply to yours of recent date will say it is impossible for me to get those bills of the cane business as I would have to make a trip east to get them for you and I will not neglect my business and ruin it for a few months salary and expenses, no odds how well you would pay me for my services. I cannot afford to ruin my business for a few months salary.

"Respectfully yours,

"S. E. REUTTER."

The witness had previously testified that Reutter was originally associated with him in the business, at Worcester, Mass.; that after he removed his plant to Williamsport, Pa., Reutter continued to purchase in the east all the parts of the cane from about twenty different parties; that he, the witness, had no knowledge who these parties were; that Reutter paid for them with money furnished by plaintiff; that his books and papers were all destroyed by the fire; that he had no knowledge himself as to who the parties were from whom the purchases were made; that Reutter was the only person who had such knowledge, and that he had repeatedly tried to get Reutter to get the bills without success. He was asked: "Q. State whether or not you had offered to pay him a salary? A. When they refused to accept the adjustment of Mr. Dubois, I wrote him that I would have to send him there no matter what it cost. Q. And these were the replies you got? A. That is the reply to the last letter I wrote him. Q. Is he the only person who has knowledge of the parties from whom these various items going to make up these canes were purchased so far as you know? A. Well, I don't think he has the knowledge himself unless he

would go there and inquire. Q. Do you know anybody else that has? A. No, I don't. Q. State whether or not many of these goods that were in that building on January 4 had been purchased a long time prior to that? A. Yes, sir, they had. Q. And were they shipped here from Worcester? A. Yes, sir." He then stated that some of them had been purchased a year before the fire, and others for several months. He also testified that he furnished all the bills he could find to the adjusters, though most of them related to the cost of the buildings and machinery; that he had several times demanded an appraisement of the property burned, which was not granted.

In this state of the testimony the question arises, was it the duty of the learned court below to withdraw the case from the jury and give a binding instruction to find for the defendant. It must be remembered that the plaintiff had testified that all the original bills and papers had been burnt at the fire and therefore it was impossible to furnish them, also that his books had all been burnt and hence he could not refer to them. There was no way therefore left in which to meet the demands of the adjusters except to procure duplicates. But he testified he did not know the parties from whom the goods had been purchased, and therefore he could not know to whom to apply for the duplicates. In this situation of the matter, he says he made repeated applications to the person who did make the purchases, and urged him to get the duplicates, offering at one time to pay his expenses, and at another, to pay him no matter what it cost. To all of this he received replies from Reutter who at one time said he would go for $3.00 per day and expenses, and at another time that he must have $5.00 per day and expenses, and at last said he would not go at all. Was all this a reasonable effort to comply with the request of the adjusters for the bills? Can we say as a matter of law that there was no evidence, more than a scintilla, of such an effort? We think not. The whole subject was for the jury. If the efforts made, in view of all the circumstances, were reasonable in the opinion of the jury, they were so in legal contemplation. We do not see how the court below could undertake to withdraw from the jury the function of deciding this question. If the plaintiff's testimony was believed, and that was exclusively for the jury, he never refused to furnish the bills or the duplicates;

he could not possibly furnish the bills as they were destroyed; he did not know the persons who sold the goods and therefore could not apply to them directly; he did make repeated efforts to induce the person who did buy the goods to get the duplicates, but was at last flatly refused by that person, who only refused because he would have been obliged to make a journey of several thousand miles, and to be absent from his own business for a long time in order to comply with the plaintiff's requests. It is really difficult to see what more the plaintiff could have done. Certainly we cannot say that what he did do was not a reasonable effort to furnish the desired papers. Hence it follows that the learned court below was not in error in submitting the question to the jury. The cases cited for the appellant do not disclose facts and circumstances such as are present in this case, upon this subject, and therefore they are inapplicable. The assignments of error are not sustained.

Judgment affirmed.