# Hess *v.* Hanover Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Waiver—Evidence.*

Where in an action on a fire policy, it appears that the plaintiff had not filed proofs of loss, and relied upon a waiver, evidence that the adjuster of the defendant many months after the suit was brought had promised that his company would pay the loss, is not admissible to establish the waiver.

Argued May 5, 1908. Appeal, No. 219, April T., 1908, by defendant, from judgment of C. P. Indiana Co., Sept. T., 1905, No. 140, on verdict for plaintiffs in case of R. L. Hess and B. M. Smith, trading as the Gipsy Mercantile Company, *v.* Hanover Fire Insurance Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before TELLFORD, J.

The facts appear by the report of Hess v. Hartford Insurance Co., post, p. 158, and by the opinion of the Superior Court.

The trial judge charged in part as follows:

This witness further testified to having been sent for by Mr. Wright, an adjuster of the Scottish Union and Hanover Insurance Companies, two of the defendants. He says he came to Indiana and met him in March, 1906—March 26, I believe—at the office of Mr. Mack. He says that they went over the bills, accounts, etc., and that Mr. Wright then offered him a compromise settlement. An offer of compromise is not admissible as evidence of the plaintiffs' claim. This item of evidence relating to what occurred at Mr. Mack's office is only to be considered by you upon the question of the waiver by the agent of the Scottish Union and Hanover Insurance Companies of their rights to proofs of loss. There is no evidence that Mr. Wright, adjuster of the two companies named, had any authority by any act of his to bind other of the defendant companies; and so you will consider this item of testimony only as it bears upon the question of a waiving of the rights of proofs of loss by the Scottish Union and the Hanover companies, defendants. You will consider this with that view in connection with the other evidence in the case.

Verdict and judgment for plaintiffs for $600. Defendant appealed.

*Errors assigned* were (1, 2) the same as in Hess v. Hartford Fire Ins. Co., post, p. 158, and (3) above instruction, quoting it.

*W. K. Jennings*, with him *D. C. Jennings* and *J. W. Mack*, for appellant.

*John L. Getty*, with him *M. C. Watson*, for appellees.

OPINION BY HEAD, J., February 26, 1909:

This case was argued with No. 218, April Term, 1908, same plaintiffs v. The Hartford Insurance Co., in which an opinion has this day been filed, post, p. 158. The first and second as-

signments of error in this case are identical with those disposed of in the former case and, for the reasons given in the opinion there filed, they must be dismissed. The third assignment, applicable only to this case, raises a distinct and independent question.

The fire occurred December 29, 1904. Under the terms of the policy the assured were required to file their formal written proofs of loss on or before February 28, 1905. Their failure to do so destroyed their right of action on the policy, unless that failure was induced by such acts or declarations on the part of the authorized representatives of the company, as fairly misled the assured into the belief that the defendant regarded the information, obtained at the joint meeting of the adjusters and assured, as a satisfactory substitute for the more formal proofs contemplated by the policy, and that, therefore, the preparation and filing of these proofs was no longer necessary. As a matter of fact the proofs were not filed within the time limited. If the plaintiffs' failure to file them had not been caused by the conduct of the company prior to the time the obligation to file matured, the right of action was gone, and the contract of insurance had become practically a dead letter. "But if without valid reason he fails to comply with the requirements of his policy at all, or to do so within the stipulated time, then the liability of the company is discharged; and mere silence, or investigation, or even negotiation, will not, in the words of SHARSWOOD, J., in Beatty v. Ins. Co., 66 Pa. 9, 'revivify the contract.' Nothing will do that short of an express agreement, or a change of position by the insured, reasonably induced by the acts of the company, and to his disadvantage:" Gould v. Ins. Co., 134 Pa. 570.

What, then, was the situation on February 28, 1905? Was there a valid and subsisting contract of insurance between the parties from which arose a then enforceable right of action in favor of the plaintiffs; or had the company's liability then been discharged and the right of action lost? Around this question the main contention of the parties centered. Obviously, we think, the correct answer to it was to be reached through an investigation of the facts as they existed on and before February 28. The learned trial court, properly as we have held, re-

ceived the evidence that tended to develop these facts, and fairly submitted it to the jury. But the plaintiffs were permitted to go further.

As early as April, 1905, before suit was brought, the plaintiffs were notified that all of the companies interested, including the defendant, had taken the position that the failure to file proofs of loss had discharged all liability. The actions were then instituted. While they were pending and awaiting trial, Mr. Wright, the adjuster of two of the companies, wrote to his local counsel at Indiana to arrange for a meeting between him and Mr. Hess, one of the plaintiffs. In his letter, which was read to the jury, he said, inter alia, "Of course you must arrange that the proposed proceedings shall not waive any of our rights, and they will not, as I understand, if taken with a view to effect a compromise and avoid litigation." The meeting occurred and, according to the testimony of the plaintiff, Hess, admitted under objection and exception, they figured over the entire loss, to be borne by all of the companies, which Wright said "we will pay," and promised to come back the next week with the money. He never came and died before the trial.

The learned trial court, in answer to defendant's objection to this testimony, said: "As we view it, the testimony proposed is only admissible for the purpose of showing a waiver of the proofs of loss by the companies which Mr. Wright represented, the Scottish Union and Hanover," and for this purpose it was admitted.

It must be apparent, we think, that this evidence would not amount to "an express agreement to revivify the contract," nor did it tend to show "a change of position by the insured, to his disadvantage," brought about by the conduct of the company after February 28, 1905. Of course, it will be conceded that the failure of the plaintiffs to file their proofs on or before February 28, could, in no possible way, have been induced or brought about, by what Mr. Wright did many months afterwards.

We are therefore unable to see how the testimony was relevant to the real issue in controversy, and as we cannot say the consideration of it by the jury did not affect or influence their

finding on the question properly submitted, we must sustain the third assignment and send the case back to be retried.

Judgment reversed and a venire facias de novo awarded.