Butler Candy Co., to use, Appellant, *v.* Springfield
Fire and Marine Ins. Co. et al.

Argued March 25, 1929. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Thomas W. Watson,* with him *James E. Marshall,* for appellant.—The burden of proof is on defendants: Survatz v. Ins. Co., 261 Pa. 390; Yost v. Fire Ins. Co., 38 Pa. Superior Ct. 594.

The demands for the records were unreasonable: Seibel v. Ins. Co., 212 Pa. 604.

*John M. Haverty,* with him *Benjamin R. Williams,* for appellee.—Plaintiff is presumed to know the covenants of its contract, and the duties which are placed on it by a reasonable construction of them: Smith v. Ins. Co., 31 Pa. Superior Ct. 29; Bingell v. Ins. Co., 240 Pa. 412; Hottner v. Ins. Co., 31 Pa. Superior Ct. 461.

The burden is on plaintiff to show that he at least made a reasonable effort to produce the records: Langan v. Ins. Co., 162 Pa. 357; Rosenberg v. Ins. Co., 209 Pa. 336.

It was the duty of plaintiff to establish its case by clear and satisfactory evidence: Suravitz v. Ins. Co., 261 Pa. 390; Gould v. Ins. Co., 134 Pa. 570.

OPINION BY MR. JUSTICE SADLER, April 15, 1929:

The plaintiff company conducted a business of trading in candy, tobacco, cigars and similar articles at Butler, Pa. It was formed in 1926, and the stock of goods was insured in fifty-two companies, the claims arising under these policies being later assigned to the present use-plaintiff after a disastrous fire. The conflagration occurred on May 13, 1927, and it was claimed losses resulted to the amount of $133,500, including the value of the fixtures. The damage resulted largely from water poured into the four-story building in an attempt to quench the blaze. All parties agreed that the entire salvage value was $6,550, and that the remaining stock, of whatever value it may have been, was ruined. The fire having occurred in the night time, insured made an effort the following morning to close the building against intrusion by nailing shut the doors.

Prompt notice was given of the loss to the various companies, and, on the 17th, their adjuster, McGovern, appeared, and thereafter placed watchmen to guard the building, and prevent interference with its contents. The books of the insured were, for safety, at once removed to the fire station, and the policies, with such other papers as desired, were examined by the representative of the insurance companies. It was agreed by all concerned that an inventory should be made by the Underwriters Salvage Company, and for this purpose the documents, including the invoices, were later returned, with the approval of the adjuster, to the offices of the candy company, and a schedule prepared of the articles

within the building at the time of the loss, without stating values, of which each party was given a copy. This work, necessary to the preparation of the proofs of loss, occupied five weeks or more. The insured engaged a public adjuster, Kann, to assist, so that the actual monetary loss could be fixed, and some of the papers of the company were at one time or another taken to his office in Pittsburgh for this purpose. After the completion of the inventory, the books were placed in the hands of Uber, a certified accountant, residing in Butler. He aided in their examination, and later they were placed in the possession of the Butler Savings & Trust Company. At no time was access to any of the documents denied to the insurers at the places where held. Though some of the invoices, and other papers, as noted, were taken to the office of the adjuster, Kann, in Pittsburgh, the balance of the documents were at all times in Butler, where the company had carried on its business. The books and ledgers, first delivered to the police station, returned to the Candy Company's office, to the expert accountant, and then to the Trust Company, were the records of the insured, as produced in court at the trial.

The proofs of loss were completed about July 19th, and delivered· to the representative of the companies. Disputes arose as to the values fixed and the claims made. Thereafter, on July 25th, McGovern, for the insurers, wrote a letter to the Candy Company requesting a complete inventory, a further statement as to the origin of the fire, the actual value and damage, proper copies of exhibits attached to the policies, and demanded "that all books of accounts, bills, invoices and other data in your possession be presented at this office [of the insurance company in Pittsburgh] on August 1, 1927, at 1:30 o'clock in the afternoon, in order that they may be examined and checked by accountants and adjusters in behalf of the undersigned insurance company." The notice also demanded the presence of named officers at the same time for examination under oath.

Counsel for the insured promptly replied on the 27th, asserting the demand was unreasonable under the circumstances, but stated, "all their books, records and files, and also their bookkeeper is at your disposal at the Butler Candy Company Offices at 234 Center Avenue, Butler, Pa., at any time convenient to you. You are at liberty to examine the same, and make copies of bills, books or other records, as you may see fit." It was further set forth that an actual delivery in Pittsburgh, many miles distant, within four days, excluding an intervening Sunday, was impracticable, since the documents were so numerous as to require the use of trucks, and there was too great danger of loss in transportation, as well as in giving them into the sole possession of the adjuster who represented an adverse interest. It will be remembered that all had been taken to the fire station on May 17, 1927, and such as were desired were then examined by the adjuster. With his permission they were returned to the insured's office, and access to them there was at all times open, and at no time denied. After the receipt of this communication, the insurers did not protest the insufficiency of the reason given for nonproduction, but again demanded that the officers themselves appear for examination under oath, as is shown by the letter of McGovern of August 10th. By agreement, the time for hearing was adjourned to September 15th, and those desired presented themselves as stipulated. No effort to examine the books was in the meantime made, though full access to them at Butler had been offered, nor was there further insistence upon their production at the adjuster's office in Pittsburgh.

The insurance companies refused subsequently to pay, and test suits were brought on two of the policies issued, in which the present appellees were named as defendants. The defenses were based on the ground that proper care to preserve the property after the fire had not been taken by the Candy Company, and that the sums claimed as losses were excessive. Certainly, the last

question was one for the jury, ánd the former need not be discussed in the view we take of the case, for the court also told the triers to determine whether the demand to carry all papers from Butler to Pittsburgh, in another county, for examination was just and equitable, and, if it so found, the failure to produce them relieved the insurer from all liability under the terms of the policy. If, as insisted by appellant, the reasonableness of such request, under the practically undisputed evidence appearing in the record, was a matter of law for the determination of the court, then it was error to submit this question to the jury, and, having been told to find for defendant, if the refusal to transport the papers to Pittsburgh was unjustified, it is impossible to say upon what ground the verdict rendered for defendant was based, and a new trial must be awarded, though other questions of fact were properly presented, and it may be the verdict rested upon the determination in appellees' favor of their contentions as to those matters.

The real point requiring present discussion is raised by the third assignment of error, for binding instructions could not have been granted for plaintiff in view of other questions raised. The policies, upon which suit was brought, provided, as is usual, that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the claimant shall show compliance with all the requirements of this policy." The insured is presumed to know the contents of his insurance contract (Smith v. Ins. Co., 31 Pa. Superior Ct. 29), but in construing it is to be favored in cases of doubt: Yost v. Anchor Fire Ins. Co., 38 Pa. Superior Ct. 594. He is required to show reasonable compliance with the terms of the policy (Bingell v. Royal Ins. Co., 240 Pa. 412), but if there is no excuse proven for failure to do so, the company cannot be held liable: Gould v. Ins. Co., 134 Pa. 570. The carrying out of the stipulations agreed on are usually construed as conditions precedent to the right to a ver-

dict, and where default is alleged, the burden is cast on the insured to show that he has performed his agreement (Rosenberg v. Fireman's Ins. Co., 209 Pa. 336; Suravitz v. Prudential Ins. Co., 261 Pa. 390), unless a waiver of the duty is made to appear: Simons v. Safety Mut. Fire Ins. Co., 277 Pa. 200; Hottner v. Fire Ins. Co., 31 Pa. Superior Ct. 461; Hess v. Hanover Ins. Co., 38 Pa. Superior Ct. 151.

Here, the policy required that the books of the insured be produced on demand "at such reasonable time and place as may be designated by this company, or its representative, and shall permit extracts and copies thereof to be made." This condition is distinct from one requiring proofs of loss: Hess v. Ins. Co., supra. Of course no valid excuse would appear if no books were kept (Weinstein v. Globe Indemnity Co., 277 Pa. 388; Gorson v. Accident Ins. Co., 283 Pa. 558), and, if such fact appeared, it would not be necessary to show the insurance company made any demand for them: Penna. Fire Ins. Co. v. Malone, 56 A. L. R. 1075, note 1086. Otherwise, a request for submission must appear (Wells Whip Co. v. Tanners Mut. F. Ins. Co., 209 Pa. 488; Hirsch Fauth Furniture Co. v. Continental Ins. Co., 24 Fed. (2d) 216), and if there is a failure thereafter to perform, or make reasonable effort to do so, a recovery will be denied: Langan v. Royal Ins. Co., 162 Pa. 357. But compliance is to be determined by reasonableness, and the failure to produce must be negligent, or show lack of good faith on the part of the insured (Liverpool Ins. Co. v. Kearney, 180 U. S. 131; Shaw v. Standard Fire Ins. Co., 129 Wash. 576), for all that is required is substantial compliance with the provisions of the policy: Mass. Fire Ins. Co. v. Schneider, 28 Fed. (2d) 658; Liverpool, Etc. Ins. Co. v. Dillon, 15 Fed. (2d) 774. An honest effort to produce must be established: Seibel v. Ins. Co., 197 Pa. 106;. Coleman v. Ins. Co., 177 Pa. 239.

"However, the provision for the production of documents is to be liberally construed in favor of the in-

sured, and a substantial compliance is sufficient......
The demand must be made within a reasonable time, and must fix a time for the production of the books or vouchers required which must be reasonable, and also fix a place, which must be a reasonable one, or ordinarily a place in the locality where the insured property was situated": 26 C. J. 388. If the insurance company fails to name the point of delivery (Seibel v. Firemen's Ins. Co., 212 Pa. 604), or fixes an unreasonably distant point, it cannot take advantage of the provision in the policy if the insured fails to comply: 26 C. J. 388; Prudential Fire Ins. Co. v. Alley, 104 Va. 356, 51 S. E. 812; Tucker v. Colonial Fire Ins. Co. (W. Va.), 51 S. E. 86, 90, and cases there cited. The insurance company must not ask what is inequitable, and escape liability if its unfair request is not complied with, just as has been held when it acts without due regard for the rights of insured in making inspections of property: Lattavo v. Ins. Co., 88 Pa. Superior Ct. 433; Berman v. Ins. Co., 90 Pa. Superior Ct. 274.

Ordinarily, where there is competent evidence, the question of the reasonableness of the demand for the production of the books is one of fact for the jury (Rosenberg v. Ins. Co., supra), but "when the facts are admitted or clearly proven," what is reasonable becomes a question of law for the court depending on the circumstances of each case: Glenn v. Colonial Assurance Co., supra; Siebel v. Firemen's Ins. Co., supra; American Fire Ins. Co. v. Hazen, 110 Pa. 530; Smith v. Scottish Union Ins. Co., 200 Mass. 50, 85 N. E. 841; see note 26 C. J. 560. So, it has been held the sufficiency of proofs of loss is a question for the court: Ulysses Elgin Butter Co. v. Home Ins. Co., 20 Pa. Superior Ct. 320; 26 C. J. 599. See Cummins v. German American Ins. Co., 192 Pa. 359, 363; Humboldt Fire Ins. Co. v. Mears, 1 Penny. 513. Authorities in other jurisdictions may be cited to the same effect: Fireman's Ins. Co. v. Mallouf, 98 Okla. 12, 223 Pac. 873; Home Ins. Co. v. Williams, 237 Fed.

171; Deskin v. U. S. Reserve Ins. Corp. (Mo. App.), 298 S. W. 103; Liverpool, Etc. Ins. Co. v. Kearney, supra.

It is here admitted that the insurance company took possession of the papers immediately after the fire, made such examination as desired, returned the same to the insured's office so that an inventory could be made, during which time it had full opportunity to make such examinations as it deemed necessary, and this privilege continued until after the proofs of loss were submitted. On July 25th it demanded the production of documents of such number as to require a full truck for transportation to a city many miles away within four days, though it then and thereafter had free access to them in Butler where the fire occurred. This privilege was again extended in the letter of counsel on the 27th, who declined to send the papers into another county because of the large quantity, and risk of loss in transporting them. Thereafter no further demand for inspection in Pittsburgh was made, but the request was limited to the right to orally examine the officers of the company under oath, which actually took place on September 15th. All of the papers were at an accessible place, and later produced in court.

Under such undisputed facts, the court should have told the jury, as a matter of law, that the insured showed a reasonable compliance with the condition of the policy, now claimed to have been violated, and should not have permitted the jury to conjecture as to this. If it could say a demand to require that all papers be sent into another county by truck for examination was reasonable, when they were available at all times at the locality where the fire occurred, then a similar finding could be sustained, had the request been to carry all to the office of one of the companies defendant, located in the State of Massachusetts. It was the duty of the court to tell the jury in this case that there was a substantial compliance with the condition of the policy. Having sub-

mitted the question to it, we cannot determine the effect and say that the verdict for the defendants was based on one of the other defenses which fairly raised questions of fact for a jury to pass upon. It follows that the third assignment must be sustained and new trials granted.

The judgments in both cases are reversed and in each a venire facias de novo awarded.