## Salerno, etc., v. New Brunswick Fire Ins. Co.

*William P. Farrell* and *Joseph F. Tedesco*, for plaintiff.

*John W. Bour*, for defendant.

EAGEN, J., July 7, 1949.—This is an action in assumpsit on a fire insurance policy. Defendant moves for judgment upon the pleadings, which question is now before the court.

Plaintiff was the owner and proprietor of a ladies' dress shop, which was destroyed by fire. The policy in suit covered the contents of the shop.

The pertinent provisions of the policy as far as the present motion is concerned are as follows:

### Requirements in Case Loss Occurs

". . . The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company, all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative and shall permit extracts and copies thereof to be made."

### Suit

"No suit or action on this policy for the recovery of any claim shall be sustainable in any Court of Law or equity unless all the requirements of this policy shall have been complied with . . ."

Defendant contends that plaintiff violated the first quoted provision and refused when requested to submit to an examination under oath. Therefore, no action on the policy may be sustained.

It appears from the admitted facts in the pleadings that plaintiff was notified by the insurance company to appear for examination as the policy required. He appeared as designated, September 14, 1948, but refused to answer certain questions propounded, on the

ground that his answers might tend to incriminate him. At the time and date he was under arrest and indictment for arson in connection with the fire. He was subsequently tried upon the indictment and a demurrer to the Commonwealth's evidence was sustained and defendant discharged.

Subsequently on March 10, 1949, after this suit had been in being for several months but not yet brought to trial, plaintiff in writing notified defendant that he was ready and willing to comply with the requirements of the policy. The insurance company did not answer this communication.

Is this sufficient compliance? That is fundamentally the question before us.

The provision involved requiring the insured to appear for examination under oath touching matters relating to the insurance risk is unquestionably valid and generally so considered. See Cooley's Briefs on Insurance, vol. 7, pages 5808-9; Appleman on Insurance, vol. 5, pages 734-5, and 29 Am. Jur. §1127.

In Hickman v. London Assurance Corp., et al., 184 Cal. 524, 195 Pac. 45, the Supreme Court of California in a well reasoned opinion held that the fact that the insured is under arrest and indictment for arson does not excuse compliance with a similarly worded provision in a fire insurance policy. In that case, while awaiting trial, the insured after request appeared for examination but refused to answer questions submitted. Just as in this case constitutional immunity was pleaded. At the time of the intended examination, the insured stated he would be ready and willing to answer questions after the disposition of the criminal prosecution. Subsequently, he was acquitted of the criminal charges and later sued upon the policy. The court held that the insured had a perfect legal right to refuse to submit to examination

but by doing so, he breached the contract and could not recover.

This case is discussed in a favorable manner in the authorities hereinbefore cited.

It would appear to us, therefore, that if plaintiff had persisted in his refusal to answer any questions touching upon the insurance risk, he would have failed to comply with his end of the insurance contract and recovery would not be possible. In other words, the threat of the criminal prosecution would not be a valid excuse for noncompliance. However, we believe that his refusal to comply would not render the policy void but merely deny recovery while the refusal continued. Having removed the bar to recovery by offering to submit to full examination, his right to proceed with his action was restored.

Defendant is inclined to agree with this last statement but contends that suit could not be instituted until compliance occurred. It is argued that compliance was a condition precedent to the right to sue. It is asked that this present action be dismissed and plaintiff be permitted to sue over. This would in effect be judgment for defendant since the limitation clause bars a new action at this late date.

We do not agree with defendants' position. The policy provides as previously pointed out, that "No suit or action . . . shall be sustainable . . . unless all requirements of this policy shall have been complied with . . ." It does not say that no suit shall be commenced or instituted, as well it might if the insurance company so desired and intended. It is well established that the law does not favor forfeiture and that such provisions, as here concerned, must be construed liberally and in favor of the insured: Butler Candy Co. v. Springfield F. & M. I. Co., 296 Pa. 552. The word "sustain" as defined in Webster's New International Dictionary is to support, uphold, maintain. In our

opinion, the correct and reasonable interpretation of this clause is that no suit or action could be upheld or maintained until compliance. In other words, no money could be recovered until plaintiff performed as required. See N. British & Mercantile Ins. Co. v. Rose 228 F. 290, and Humphrey v. Nat'l. Ins. Co., 231 S. W. 750 (Tex.).

Therefore, July 7, 1949, the motion for judgment upon the pleadings is overruled and the rule to show cause discharged.