CECIL K. CHAVIS, AND WIFE VICKY L. CHAVIS v. STATE FARM FIRE AND CASUALTY COMPANY

No. 138A86

(Filed 12 August 1986)

Insurance § 122— fire insurance—policy provision requiring production of records —overbroad

　　　The trial court erred by granting defendant's motion for a directed verdict in an action under a fire insurance policy where plaintiffs had complied with all requests by defendant to furnish information but had refused to sign a release authorizing access to any and all records in connection with all banks or any type of lending institution with which plaintiffs had done any business. N.C.G.S. § 58-176 does not grant to the insurer an unlimited right to roam at will through all of the insured's financial records without the restriction of reasonableness and specificity.

APPEAL pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals reported at 79 N.C. App.

213, 338 S.E. 2d 787 (1986), affirming the trial court's allowance of defendant's motion for directed verdict at the close of all of the evidence and entry of judgment for defendant.

The pertinent facts are as follows. On 17 February 1981 plaintiffs procured a policy of fire insurance from defendant, insuring their dwelling in the amount of $34,000.00. The policy also provided personal property coverage of $17,000.00, additional living expenses coverage of $6,800.00, and appurtenant structure coverage of $3,400.00. On 5 October 1981, plaintiffs' home and its contents were destroyed by fire. As required by the policy, plaintiffs timely notified defendant of their loss. Defendant paid Farmers Home Administration $17,892.21 for assignment to it of a deed of trust held by Farmers Home Administration on plaintiffs' property. Defendant also paid to plaintiffs $1,500.00 for living expenses incurred as a result of the fire. When defendant declined to make further payment under the policy, plaintiffs instituted action praying for recovery of $33,107.79, the balance of the policy coverage on the burned dwelling and contents and for attorney's fees in the amount of $1,000.00 which aggregated a total prayer for relief of $34,107.79. Defendant answered, alleging that plaintiffs were precluded from recovering on the policy due to their failure to produce books of account and other records as required by the policy and due to the fact that the fire was the result of arson.

At trial, plaintiffs produced evidence tending to establish the value of their home at the time of the fire at $40,500.00. After the fire, the value of their home was estimated at $2,500.00, representing the value of the lot. Plaintiffs denied that the fire was started as a result of arson or that they had misrepresented their financial condition to defendant.

Defendant offered *inter alia* the testimony of Gary Moss, an expert in the field of fire analysis, that based on the physical evidence present at the scene the fire was not caused by accidental means. Vance Allen, an expert in fire debris analysis, testified that each of the five samples taken from different locations at the scene contained a fire accelerant of either kerosene or number two fuel oil.

At the close of all the evidence, the trial court granted defendant's motion for a directed verdict on the basis that plaintiffs

had breached a provision of the fire insurance policy as a matter of law by failing to produce documents and accounts as requested by defendant, a condition precedent for a recovery on the policy.

*Burns, Pope, Sessoms and Williamson, by William J. Williamson, and T. Craig Wright, co-counsel for plaintiff-appellants.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., for defendant-appellee.*

BRANCH, Chief Justice.

The sole question presented by plaintiffs' appeal is whether the trial court erred in granting defendant's motion for a directed verdict. The trial court's ruling in defendant's favor at the close of all the evidence terminated the action on the ground that as a matter of law plaintiffs were precluded from recovering on the fire insurance policy because they had failed to produce their financial records as required by the policy. Consequently, the issue of arson was never submitted to the jury.

The portion of the standard fire insurance policy relevant to a determination of this issue is as follows:

> The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.
>
> . . . .
>
> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity; unless all the requirements of this policy shall have been complied with. . . .

These provisions were inserted into the policy in question, not by the Company, or by plaintiffs, but by statute, N.C.G.S. § 58-176. *See Johnson v. Insurance Co.*, 201 N.C. 362, 160 S.E. 454 (1931).

Under the terms of these particular provisions, the insured as a condition precedent to recovering on the policy must: (1) exhibit the remains of the subject property, (2) submit to examinations under oath, (3) produce for examination, as often as may be reasonably required, all books of account, bills, invoices, and other vouchers, and (4) permit copies of these records to be made.

The record in this case discloses that on 25 November 1981 defendant requested that plaintiffs appear on 4 December 1981 for an examination under oath. Plaintiffs were also instructed at this time to bring a detailed inventory of the items claimed, as well as any bills, invoices, receipts, and other documents that they had to substantiate their loss. It is uncontroverted that plaintiffs complied with these requests. It is also uncontested that persons designated by defendant were given free access to the fire site for their various inspections.

During the 4 December deposition proceedings, defendant further requested that plaintiffs sign a form authorizing defendant to secure copies of their tax returns from 1975 to date. Plaintiffs again complied. The record also reveals that both plaintiffs were thoroughly deposed and answered detailed questions concerning their income, assets, banking relationships, loans and loan payment record, credit accounts, involvement in any civil lawsuits or criminal proceedings, and their other insurance policies. Plaintiffs likewise answered various personal questions, including questions concerning their consumption of alcohol and any history of fires in their family backgrounds. In fact, the record plainly indicates that plaintiffs complied with all requests made by defendant, except for their refusal to sign the following release:

AUTHORIZATION AND RELEASES OF
INFORMATION AND RECORDS

I, Cecil K. Chavis and Vickie Chavis, do hereby authorize any representative of all banks and/or any type of lending institution which I have done any business with to consult with and/ or deliver to any representative of State Farm Fire and Casualty Company any and all records referred to or requested by any representative of State Farm Fire and Casualty Company.

This the 4th day of December, 1981.

Plaintiffs concede that under a contract of fire insurance in North Carolina an insured must provide all documents and information which relate not only to the loss itself, but also to the insured's financial condition if a defense of arson is anticipated. Plaintiffs argue, however, that the above unqualified and unlimited authorization and release exceeds the scope envisioned by the legislature when it included the "production of documents" provision in the standard fire insurance policy of N.C.G.S. § 58-176. We agree.

In the first place, the "production of documents" provision in the statutory policy only expressly provides that the insured shall *produce* for examination "all books of account, bills, invoices, and other vouchers." This provision is similar in purpose to "iron-safe clauses" traditionally included in fire insurance policies. These clauses required the insured to keep a record of its accounts and inventories and thus enabled the insurer to verify the value of the insured's loss by fire. *See generally Arnold v. Insurance Co.*, 152 N.C. 232, 67 S.E. 574 (1910); *Coggins v. Insurance Co.*, 144 N.C. 7, 56 S.E. 506 (1907); *Parker v. Insurance Co.*, 143 N.C. 339, 55 S.E. 717 (1906).

As noted above, defendant likewise requested in the initial stage of its investigation that plaintiffs compile a "detailed inventory of the items claimed [by the fire], as well as any bills, invoices, receipts, and other documents that they had to substantiate their loss." These kinds of documents typically reveal the ownership and value of the property lost by fire for which the insurer must pay. As also noted, plaintiffs willingly complied with this request.

Certainly, we recognize that the financial condition of the insured is a relevant matter of inquiry to an insurer suspecting arson. *See State v. Harrell*, 20 N.C. App. 352, 201 S.E. 2d 716, *cert. denied*, 284 N.C. 619, 202 S.E. 2d 275 (1974). *See generally Halford v. American Preferred Ins.*, 698 S.W. 2d 40 (Mo. App. 1985); *Payne v. Nationwide Mutual Ins. Co.*, 456 So. 2d 34 (Ala. 1984). Yet, contrary to defendant's position, the statutory clause does not expressly authorize the insurer's unlimited access to any and all of the insured's other business and financial records.

In our opinion, the language of the statutory provision in question assumes that the insurer's requests for documents will

be reasonable and will relate to the insured property. The provision does not grant to the insurer an unlimited right to roam at will through all of the insureds' financial records without the restriction of reasonableness and specificity. Such an obligation would subject an insured to endless document production, including every check they might have tendered and every automatic teller withdrawal they might have made, as the insurer fished for evidence on which to build an arson defense.

In *Happy Hank Auction Co. v. Amer. Eagle Fire Ins. Co.*, 286 A.D. 505, 509, 145 N.Y.S. 2d 206, 211 (1955), *modified on other grounds*, 1 N.Y. 2d 534, 154 N.Y.S. 2d 870, 136 N.E. 2d 842 (1956), the New York Supreme Court in construing a similar statutory fire insurance policy provision stated that insurers have no license to harass insureds with aimless questions and demands for documents, or with random shots in the dark. The court noted that the circumstances must excite suspicion so that there is a basis for probing the bona fides of the claim and that the questions asked and documents sought must have point and direction. *Id.*

Likewise, in order to carry out the reasonable and relevant requirements in our statutory provision, we construe these particular terms of the policy to require the insurer's request to be specific. The release form in the present case, requesting access to "any and all records" in connection with "all banks and/or any type of lending institution" with which plaintiffs had done "any business" is simply unreasonably broad. It is this lack of specificity in defendant's request and plaintiffs' willingness to comply with all other requests which distinguishes this case from those cases cited by defendant in support of its position, including *Kisting v. Westchester Fire Ins. Co.*, 290 F. Supp. 141 (W.D. Wis. 1968), *aff'd*, 416 F. 2d 967 (7th Cir. 1969); and *Southern Guaranty Ins. Co. v. Dean*, 252 Miss. 69, 172 So. 2d 553 (1965). Had defendant's request for banking information been reasonably specific plaintiffs would have been obligated to produce the requested documents. We hold therefore that plaintiffs were justified as a matter of law in refusing to sign this overbroad release. The trial court, therefore, improperly granted defendant's motion for a directed verdict.

Since the trial court improperly granted defendant's motion for a directed verdict, the decision of the Court of Appeals affirming the judgment of the trial court is

Reversed.