JAMES C. MOORE v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 868SC10

(Filed 2 September 1986)

1. **Insurance § 122— condition precedent—production of records—denial of directed verdict for defendant—error**

In an action under a fire insurance policy, the evidence was insufficient to create a jury question as to the reasonableness of the times and places for the production of records by plaintiff where plaintiff received two requests for production of documents at the Lenoir County Courthouse; he refused the first, claiming that the records were in an office in the rear of the store which had burned and that he had not had time to organize them or to clean soot and water damage; the second request specifically provided that plaintiff should

produce the records in whatever status they were presently in; plaintiff maintained that he did not have time to compile them; and plaintiff admitted at trial that he need only have transported his files and "a bunch of bags" from the store to the courthouse to comply with defendant's second request for production.

**2. Unfair Competition § 1— refusal to pay fire insurance claim—directed verdict for defendant proper**

> The trial court did not err in an action under a fire insurance policy by granting defendant's motion for a directed verdict on plaintiff's claim that defendant violated N.C.G.S. § 75-1.1 where the record revealed no basis for concluding that defendant engaged in unfair or deceptive acts or practices and the court, while considering which issues to submit to the jury, stated that it deemed the claim abandoned because plaintiff had not made reference to the Chapter 75 claim in its brief.

Judge PHILLIPS concurring in the result.

APPEALS by plaintiff and defendant from *Reid, Judge*. Order entered 24 June 1985 in Superior Court, LENOIR County. Heard in the Court of Appeals 10 June 1986.

Plaintiff's grocery store and its contents were substantially damaged by fire. At the time the store was covered under a "Special Multi-Peril" insurance policy issued by defendant. The policy includes standard provisions from N.C. Gen. Stat. 58-176 which provide that

> [t]he insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.
>
> . . . .
>
> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

Defendant denied plaintiff's claim for damages resulting from the fire. Plaintiff brought this action seeking damages for defendant's alleged breach of the insurance contract. Plaintiff also alleged that defendant committed "a breach of the covenant of good faith and fair dealing" and engaged in "unfair and deceptive acts or practices affecting commerce in violation of [N.C. Gen. Stat. 75-1.1]."

The jury returned a verdict for defendant. The court, *ex mero motu*, set aside the judgment and ordered a new trial as to all issues "for an irregularity from which the [c]ourt determine[d] that the [p]laintiff was prevented from having a fair trial."

Plaintiff and defendant appeal.

*Whitley, Coley, and Wooten, by Robert E. Whitley, for plaintiff.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., and J. Thomas Cox, Jr., for defendant.*

WHICHARD, Judge.

### Defendant's Appeal

[1] Defendant contends the court erred in denying its motion for directed verdict on plaintiff's contractual claims. Specifically, defendant contends that the court should have granted this motion because plaintiff failed to present sufficient evidence demonstrating his compliance with the provisions of the policy requiring the insured to produce books of account and other documents. We agree.

In general,

> [i]n considering any motion for directed verdict [under N.C. Gen. Stat. 1A-1, Rule 50], the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant v. Nationwide Mutual Fire Insurance*, 313 N.C. 362, 369, 329 S.E. 2d 333, 337-38 (1985). The court may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *Dickinson v. Pake*, 284 N.C. 576, 583, 201 S.E. 2d 897, 902 (1974).

Plaintiff's evidence tended to show, in pertinent part, that:

Prior to the fire plaintiff maintained an office in the rear portion of the grocery store where he kept most of his business records. After the fire this office had smut damage and water damage but no fire damage. The records were kept in a metal filing cabinet.

By a letter dated 4 November 1983, defendant notified plaintiff that, pursuant to the provisions of the policy, he was "required to submit to an examination under oath at the Lenoir County Courthouse on Wednesday, November 16, at 11:00 A.M." Defendant's letter continued with the following request for production of documents:

> At this examination under oath you will be required to produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, in any way relating to the alleged loss and to [permit] extracts and copies thereof to be made. You should also bring with you any business documents, United States Federal Income Tax Returns and North Carolina State Income Tax Returns for the past three years, any financial statements which pertain to your business, your accounts, deeds to all property owned by [you], your banking records, your inventories concerning your business for the past three years, and sales and receipts for this period of time also.

Plaintiff admitted receiving this letter around 12-13 November 1983. Plaintiff attended the examination on 16 November 1983, but he failed to bring books of accounts, bills, invoices, vouchers, banking records, inventory records, sales and receipts or tax returns. Plaintiff testified at trial that he did not comply with defendant's request because he did not "have time to compile [his records]." Specifically, plaintiff testified that he could not comply because of "the order my records were in, plus the water damage, no electricity, and in the summertime and I couldn't afford to take

the stuff in my house until I have everything cleaned out there." At the hearing defendant's counsel asked plaintiff to sign a tax waiver and a release on all his banking records. Plaintiff refused to sign any release forms.

Plaintiff then received notice from defendant, by letter dated 21 November 1983, of a second examination on 2 December 1983. This letter specifically provided that: "[a]s we have conferred by telephone prior to November 16, concerning the examination under oath, we once again request that [plaintiff] bring what records, if any, he has as outlined in [our letter] of November 4, 1983 and in whatever status the records are presently in."

Plaintiff attended the examination on 2 December 1983 and again failed to produce the requested documents. Instead, plaintiff delivered a statement, which provides, in pertinent part:

> [T]he compiling and gathering of these documents for your examination is a most difficult task. Almost all of the documents requested were, at the time of the fire, kept in my office located within the store. There has been much smoke and soot damage in my office which has made the removal of my documents and paperwork therefrom a difficult and very time consuming task. I have explained this, through my attorney, to your company on more than one occasion and it is my understanding that representatives of your company have stated to my attorney that they have examined the office in my store and that they did not observe any signs of smoke or soot damage. An examination of my office will clearly show otherwise.
>
> In the last several weeks I have been very busy on a daily basis in farming my farm properties, particularly my soybean crop. I have worked an average of 6 to 7 days a week, approximately 10 to 12 hours per day. Because of this schedule I have not been able to spend any time cleaning and organizing my documents and books to the point they would be removable from my office. Because your company has refused to make any advancements to me, the only source of income I have for my family is the sale of my soybean crop and I simply cannot take any time away from harvesting that crop to attend to the bookkeeping necessary to have these documents in a presentable form.

I have brought with me what documents I am able to furnish which did not require substantial time on my part to obtain. I advise each of you present at this hearing that all of my other bookkeeping, accounts and paper work are presently located in the office within my store which is located on Highway 70 East, approximately 2 to 3 miles from the location of this Courthouse. These documents are available for inspection by representatives of your company at the present time. I would be glad to leave the Courthouse and go with representatives of the North Carolina Farm Bureau to my place of business located on Highway 70 East and to permit the examination and/or copying of any documents which I have in my office at the present time.

During the 2 December 1983 examination plaintiff explained this statement:

I don't refuse to go to my office. I'll go to my office right now and be glad to carry you with me. But as far as going and bringing the smutty mess over here, I refuse to do that, but I'll be glad to take you in my automobile and go right now.

Plaintiff admitted at trial that, in order to comply with the second request for production of documents, he only needed to "pull out the [file cabinet] drawer and walk out [of his grocery store or] take a box and put a bunch of bags and files and walk out [of the store] . . . ."

Plaintiff contends the foregoing evidence was sufficient to create a jury question "as to the reasonableness of the times and places for production of records." For reasons hereinafter set forth, we hold that the evidence was insufficient to create a jury question as to the reasonableness of the times and places for production, and that the court thus erred in failing to grant defendant's motion for directed verdict.

In *Chavis v. State Farm Fire and Casualty Co.*, 317 N.C. 683, 346 S.E. 2d 496 (1986), plaintiff-insureds filed suit against defendant-insurer for loss suffered as a result of fire. The trial court granted defendant-insurer's motion for directed verdict on the ground that as a matter of law plaintiffs could not recover on the fire insurance policy issued to them by defendant-insurer because plaintiff-insureds had failed to produce their financial

records as required by the policy. The policy included the standard provisions from N.C. Gen. Stat. 58-176 regarding an insured's obligation to produce documents and to comply with policy provisions as a prerequisite to bringing suit. Plaintiff-insureds complied with all requests made by defendant-insurer except for their refusal to sign a form authorizing the release of all of their banking records to defendant-insurer.

The Court held that "plaintiffs were justified as a matter of law in refusing to sign this overbroad release." *Chavis*, 317 N.C. at 688, 346 S.E. 2d at 499. The Court noted that, under the policy terms from N.C. Gen. Stat. 58-176,

> the insured as a condition precedent to recovering on the policy must: (1) exhibit the remains of the subject property, (2) submit to examinations under oath, (3) produce for examination, as often as may be reasonably required, all books of account, bills, invoices, and other vouchers, and (4) permit copies of these records to be made.

*Id.* at 686, 346 S.E. 2d at 497. It continued:

> In our opinion, the language of the statutory provision in question assumes that the insurer's requests for documents will be reasonable and will relate to the insured property. The provision does not grant to the insurer an unlimited right to roam at will through all of the insureds' financial records without the restriction of reasonableness and specificity. Such an obligation would subject an insured to endless document production . . . .

*Id.* at 687-88, 346 S.E. 2d at 499. The Court thus reasoned:

> [W]e construe these particular terms of the policy to require the insurer's request to be specific. The release form in the present case, requesting access to "any and all records" in connection with "all banks and/or any type of lending institution" with which plaintiffs had done "any business" is simply unreasonably broad. It is this lack of specificity in defendant's request and plaintiffs' willingness to comply with all other requests which distinguishes this case from those cases cited by defendant in support of its position . . . . Had defendant's request for banking information been reasonably

specific plaintiffs would have been obligated to produce the requested documents. [Citations omitted.]

*Id.* at 688, 346 S.E. 2d at 499.

In *Chavis* the issue was whether the scope and extent of inquiry pursuant to the request for production of documents was reasonable. Here, by contrast, the issue is whether the time and place for production was reasonable. Accordingly, while both *Chavis* and this case involve the general question of plaintiff-insureds' compliance with requests for production of documents, the precise issue addressed in *Chavis* is distinguishable and does not control the result here.

"Ordinarily, where there is competent evidence, the question of the reasonableness of the demand for the production of [documents] is one of fact for the jury." *Butler Candy Co. v. Springfield Fire & Marine Ins. Co.*, 296 Pa. 552, 559, 146 A. 135, 138 (1929). However, " 'when the facts are admitted or clearly proven,' what is reasonable becomes a question of law for the court, depending on the circumstances of each case." *Id. See also* Annot., 63 A.L.R. 504 (1929) and *Couch on Insurance 2d* Sec. 49A-145 (1982).

The evidence here provides the following admitted or clearly proven facts: Plaintiff received two requests for production of documents at the Lenoir County Courthouse. The second request specifically provided that he should produce them in "*whatever status the records are presently in.*" (Emphasis supplied.) Plaintiff expressly refused to bring the requested records to either examination, maintaining that he did not have time to compile them. However, plaintiff admitted at trial that he need only have transported his files in "a bunch of bags" from his store to the courthouse to comply with defendant's second request for production.

We hold that these facts provide no basis from which a jury could find that, under the circumstances, the time or place for the production of these documents was unreasonable. Rather, the evidence shows that plaintiff simply refused to comply with defendant's second request to bring the documents "as is." By failing to "produce for examination [, as often as may be reasonably required,] all books of account, bills, invoices, and other vouchers, . . . ." plaintiff has failed to satisfy "a condition precedent to recovering on the policy . . . ." *Chavis, supra,* 317 N.C. at

687, 346 S.E. 2d at 498. Accordingly, the court erred in failing to grant defendant's motion for directed verdict on plaintiff's contractual claims. *See Butler, supra,* 296 Pa. at 560, 146 A. at 139.

Given our disposition of this issue, we need not consider defendant's other arguments.

### Plaintiff's Appeal

[2] Plaintiff contends the court erred in granting defendant's motion for directed verdict as to plaintiff's claim that defendant violated N.C. Gen. Stat. 75-1.1. Assuming, *arguendo,* that we should even reach this issue in light of our disposition of defendant's appeal, our review of the record reveals no basis for concluding that defendant engaged in unfair or deceptive acts or practices. Further, the court, while considering which issues to submit to the jury, stated that it "takes from the response contained in [plaintiff's] brief, the [p]laintiff not making reference to the Chapter 75 claim, deems it to be abandoned." Accordingly, this assignment of error is overruled.

Given our disposition of defendant's appeal, we need not reach plaintiff's remaining arguments.

For the reasons stated the order granting a new trial is reversed, and the cause is remanded for entry of judgment in favor of defendant.

Reversed and remanded.

Judge PHILLIPS concurs in the result.

Judge MARTIN concurs.

Judge PHILLIPS concurring in the result.

Although I agree that plaintiff's case must fail I do not agree that it should have been dismissed on defendant's motion for a directed verdict. In addition to the portions of plaintiff's letter quoted in the majority opinion, it also stated:

. . . I further state that I have not had the time, opportunity or resources to clean, compile or organize my book-

keeping records and that they are essentially in the same condition today that they were in on the date of the fire.

If your company does not desire to examine these documents at my store on today's date, I will make them available for examination by the proper representatives of your company at any other day or time upon reasonable notice to me or my attorney.

I anticipate that I will have the time to go through my records and documents and to put them in such condition that I would be able to present them at the Courthouse by January 15, 1984, or perhaps earlier. If I am able to have these documents in such a state that they would be presentable at the courthouse before January 15, 1984, I will have my attorney contact your representatives. If at any time between now and then representatives of your company would desire to examine these documents for copying or otherwise, I will be glad to make them available upon reasonable notice and at reasonable times.

This evidence, along with plaintiff's other evidence concerning the extensive water and smoke damage done to his office and the papers involved, his unqualified willingness to permit defendant without restriction to examine the records where they then were and to take the records to the courthouse after he had an opportunity to clean and organize them, and as to the demands of his farming business on his time, when viewed in the light most favorable to him clearly raised, I think, a question of reasonableness that jurors, rather than judges, should decide. The evidence not only tends to show plaintiff's good faith willingness to comply with the policy terms, it also tends to indicate that sacking up the papers in their damaged condition and taking them to the courthouse, as the majority holds should have been done, was an unreasonable, wasteful course that would have accomplished nothing whatever.

After this case was fully tried out the jury determined that plaintiff wilfully failed "to produce documents as required under the policy," and in my view judgment for the defendant should have been entered on that verdict. The circumstance that caused the judge to set the verdict aside—that he briefly conversed with the defendant's arson witness in the presence of the jury—could

not have prejudiced the verdict on this crucial issue, or any other issue for that matter, since the jury found that arson was not involved.